UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-149-FL

| | |
|---|---|
| MARGARET A. WARREN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Margaret A. Warren ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB payments on 23 February 2005, alleging disability beginning 11 August 2004. (R. 39-41). Her claim was denied initially and upon reconsideration. (R. 29-34, 36-37). A hearing before the Administrative Law Judge ("ALJ") was held on 6 April 2007, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 242-67). On 24 April 2007, the ALJ issued a decision

denying Claimant's claim. (R. 13-26). On 23 January 2008, the Appeals Council denied Claimant's request for review. (R. 5-9). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give controlling weight to the opinion of Claimant's treating physician; (2) improper assessment of Claimant's credibility; and (3) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 1, 8, 10. ("Pl.'s Mem.").

3

# FACTUAL HISTORY

## I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) depression; (3) morbid obesity; and (4) left shoulder tendonitis. *Id.* The ALJ also found Claimant had a nonsevere impairment of diabetes mellitus. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> These symptoms resulted in a mild restriction in activities of daily living, mild difficulty in maintaining social functioning and mild difficulty in maintaining concentration, persistence or pace. There have been no repeated episodes of decompensation of extended duration.

*Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] at the unskilled (i.e., simple, repetitive, routine tasks) level. *Id.* The ALJ also identified the following non-exertional limitations: (1) inability to bend or climb

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

stairs; (2) inability to climb ladders, ropes or scaffolds; (3) no working around dangerous machinery; and (4) inability to work at a production rate or in a stressful environment. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 23). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a teacher's aide, administrative clerk or housekeeper. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-two years old and unemployed. (R. 245). Last employed as a substitute teacher, Claimant's past work experience also includes engineering assistant, office assistant and housekeeping. (R. 246-48, 252).

Claimant testified to suffering from constant, daily pain across her lower back and down her legs, muscle spasms and depression. (R. 253, 258, 262). As a result of her pain, Claimant cannot bend at the waist, stoop, walk, sit or stand for more than thirty minutes or lift items in excess of five pounds. (R. 253-54, 260). To alleviate the pain, Claimant lays down for up to four hours a day, alternates between sitting and walking, and uses a heating pad and a TENS unit. (R. 255, 257). Claimant also takes the following pain medications: Naproxen, Vicodin, Flexeril and Percocet. (R. 256). Claimant stated Flexeril causes her to experience sleepiness and "fogginess." (R. 256-57). Claimant received no relief from the epidural steroid injection received in December 2006. (R. 257). Claimant explained she has not noticed an improvement

5

in her condition despite a fifty pound weight loss. (R. 260). Claimant takes Prozac and Wellbutrin for depression. (R. 262).

Claimant's daily activities include light housework which does not require bending at the waist and light walking on the weekends. (R. 254, 259). In addition to performing most household chores, Claimant's husband assists Claimant with her personal needs, including tying Claimant's shoestrings, helping Claimant into the shower and when bending is impossible due to pain, washing her from the waist down. (R. 260).

### III. Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler, Certified Disability Management Specialist, testified as a VE at the administrative hearing. (R. 99-100, 262-67). After the VE's testimony regarding Claimant's past work experience (R. 264), the ALJ posed the following hypothetical:

> "[P]resume a person the same age, education, and work experience as the claimant and also that such a person has maintained all the transferable skills that a person such as the claimant may have acquired during the course of her vocational life....[P]resume a person who can engage herself in an occupation that would allow for a sit and stand option at her discretion, that such a person could lift or carry 20 pounds occasionally, 10 pounds frequently. There would be no bending, no climbing of any great consequence. There would be no limitation on reaching, grasping and handling with the right or dominant hand. No heavy industrial equipment, but perhaps something (sic) light equipment and I would include in that computers and the like. In simple routine, repetitive environment and low stress, non-production pace. With those qualities and limitations in mind, are there jobs in the regional or national economy that such a person might perform?

*Id.* The VE responded the individual could perform the following jobs: (1) office helper - DOT 239.567-010, 2,000 locally, 150,000 nationally; (2) mail clerk - DOT 209.687-026, 1,000 locally, 50,000 nationally; and (3) cashier II - DOT 211.462.010, 3,000 locally, 350,000 nationally. (R. 265). Claimant's attorney amended the ALJ's hypothetical to include

6

laying, reclining, or having her feet in an elevated position for at least four times out of the workday for at least 30 minutes at a time...no more than lifting five pounds, no twisting, no stooping...and also a person...who takes medication that would decrease his or her ability to concentrate to the level to perform even short routine repetitive tasks.

(R. 266-67). The VE responded in the negative. (R. 267).

## DISCUSSION

I.   **The ALJ did not err in evaluating the opinion of Claimant's treating physician.**

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, Soon Kwark, M.D. Pl.'s Mem. at 6-8. This Court disagrees.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even

7

one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006).

When the ALJ does not give the opinion of a treating physician controlling weight, he must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The medical opinion at issue appeared in a residual functional capacity report dated 27 February 2007, wherein Dr. Kwark's responses indicated Claimant is incapable of performing a full range of sedentary work. (R. 23, 210-13). While acknowledging Dr. Kwark's January 2005 notation regarding the worsening of Claimant's chronic low back pain (a condition that Dr. Kwark noted has been in existence for approximately six years) (R. 141), the ALJ found that Dr. Kwark's "opinion of...[C]laimant's ability to perform work activities is conclusory...." (R. 29). Substantial evidence supports the ALJ's decision to discount Dr. Kwark's opinion. In particular, the ALJ justified his decision to accord decreased evidentiary weight to Dr. Kwark's opinion based on the following: (l) the "very little explanation of the evidence relied on in forming [his] opinion;" (2) the lack of support by Dr. Kwark's "own clinical findings and notes" for Claimant's

8

subjective complaints; (3) Dr. Kwark's failure to note "clinical findings such as neurological changes, ability to ambulate or gait changes or motor deficiencies and strength loss;" and (4) the inconsistency between the opinion of Dr. Kwark, a family medicine specialist, with those of Drs. Mark Burt, M.D., and Daniel Albright, M.D., orthopaedic specialists. (R. 23).

The ALJ noted that while Dr. Kwark described Claimant as "slow and stiff getting up from the exam table," (R. 23, 140, 221) his clinical findings included Claimant's negative straight leg raise testing (R. 140, 141, 216), her normal gait (R. 41), her normal lumbar curvature (R. 219, 221, 224), the lack of an "obvious" muscle spasm (R. 216, 221), no pain or point tenderness along the spinous processes (R. 216, 219) and no motor deficits of the quadriceps or ankle extensors or flexors (R. 224). (R. 22). The ALJ noted further that Claimant's orthopaedic specialisits "opined that working and moving, along with physical therapy, would be beneficial." (R. 23).

In February 2004, Dr. Burt noted Claimant's "limited lumbar flexion to about 80 degrees secondary to some pain and soreness in the lumbar musculature" (R. 133) and the appearance of "some early degenerative disk disease and disk bulging." (R. 21, 132). However, Dr. Burt noted further that Claimant was neurovascularly intact distally in both lower extremities, had negative straight leg testing and full muscle strength. *Id.* Assessing Claimant's lower back pain as "mechanical in nature, degenerative disk disease," Dr. Burt encouraged Claimant to work on a home exercise and weight loss program. *Id.*

In February 2005, Dr. Albright noted that Claimant had "painless bilateral hip rotation," walked adequately about the room, toe walked, heel walked and squatted adequately, had a slightly positive left straight leg raise testing and had a zero to 30° lumbar range of motion

9

marked by "poor effort." (R. 21, 135). While noting Claimant's multilevel lumbar disk degeneration and her complaint of "dominant, constant back pain," Dr. Albright recommended weight loss, swimming and biking, "work[ing] as she is able or...perform[ing] some type of activity outside of the house and [to] keep moving." (R. 136).

The consideration of the 20 C.F.R. § 404.1527(d) factors ultimately convinced the ALJ to accord decreased weight to Dr. Kwark's opinion, as the absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of the questionnaire. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Kwark's opinion and the reasons for said weight. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir.1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Kwark's opinion.

## II. The ALJ properly evaluated the credibility of Claimant's statements.

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 22-25. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's

ability to perform basic work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms
(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

11

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records regarding her depression, in addition to her degenerative disk disease, as explained above. As for Claimant's depression, the ALJ noted that subsequent to November 2005, Claimant's complaints to Dr. Kwark did not include allegations of depression. (R. 23). The ALJ noted further the lack of an Axis I or II diagnosis by Assad Meymandi, Ph.D., the state agency psychologist who conducted Claimant's psychiatric evaluation. (R. 24, 170). Finally, the ALJ observed that Dr. Meymandi assessed Claimant's Global Assessment of Functioning score ("GAF")[2] at 75, *see id.*, which indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors...no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32 (bold typeface omitted).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's testimony as to daily activities, which included limited

---

[2] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994).

household chores (2) Claimant's chronic lower back pain, muscle spasms down her legs, and the lack of pain despite a fifty-pound weight loss; (3) Claimant's testimony as to her inability to stand, sit or walk for more than thirty minutes at a time, her inability to bend and to get back up when she stooped and her inability to twist side-to-side; (4) Claimant's use of pain medication, muscle relaxants and anti-inflammatories, complaints that her medications were sedating in nature, and an ineffective epidural steroid injection; and (5) Claimant's use of a heating pad and a TENS unit for fifteen minutes three times daily. (R. 21-23).

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only light exertional activities with no climbing, despite a state agency physical RFC assessment indicating Claimant was capable of medium exertion with limitations of occasional climbing (R. 156-63), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. *See* (R. 23) (explaining "in giving...[C]laimant the maximum benefit of the doubt, the undersigned will find that she has greater physical limitations" than those found by the state agency physician). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ],

13

and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV. The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 10-11. This Court disagrees.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

The ALJ considered Claimant's subjective complaints and Claimant's medical history. As discussed above, the ALJ's opinion provides a review of Claimant's medical records and statements by Claimant found to be credible. Moreover, while a state agency consultant found Claimant had the RFC to perform medium work, the ALJ only found Claimant capable of light work. The ALJ's finding that Claimant "is limited to simple, repetitive, routine tasks, i.e., unskilled work" is supported by Dr. Meymandi's assessment of Claimant's GAF score. (R. 24, 170); *see Hall v. Harris*, 658 F.2d 260, 266 (4th Cir. 1981) ("Unskilled work denotes work

14

which requires little or no judgment in the performance of simple duties that can be learned on the job in a short period of time."); *see also* S.S.R. 85-15, 1985 WL 56857, at *4 (mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions); *accord* S.S.R. 96-9p, 1996 WL 374185, at *9 (mental activities required by unskilled work include understanding, remembering, and carrying out simple instructions and making simple work-related decisions). Finally, in compliance with S.S.R. 96-8p and as discussed in detail above, the ALJ explained his resolution of the opinion by Claimant's treating physician and its lack of support and inconsistency with the medical evidence as a whole. (R. 351-352).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except

15

upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 29th day of September, 2008.

*(signature)*
Robert B. Jones, Jr.
United States Magistrate Judge